Argued and submitted January 31, conviction for robbery in the second degree reversed and remanded; sentences vacated and remanded for resentencing; otherwise affirmed June 20, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CARL ALFRED RENNELLS,
*Defendant-Appellant.*

Hood River County Circuit Court
040109CR; A126296

162 P3d 1006

See also 212 Or App 51, 157 P3d 239.

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

This is the companion case to *State v. Jackson*, 212 Or App 51, 157 P3d 239 (2007). Defendant appeals from a judgment of conviction for, among other crimes, robbery in the second degree, ORS 164.405(1)(b).[1] He challenges, principally, (1) the denial of his motion for a judgment of acquittal (MJOA) on that charge and (2) a jury instruction describing the elements and application of ORS 164.405(1)(b). For the reasons stated in *Jackson*, we reject defendant's argument, in support of his MJOA, that the state failed to prove that he was "actually present" at the scene of the robbery within the meaning of ORS 164.405(1)(b). However, we agree with defendant that, in the circumstances of this case, the court's instruction to the jury on second-degree robbery was erroneous in that it permitted defendant to be convicted of that crime notwithstanding that he had not personally used physical force against the victim of the predicate theft. Accordingly, we reverse and remand as to that charge.[2]

We review the denial of an MJOA to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). We review the trial court's jury instructions for errors of law. *See State v. Moore*, 324 Or 396,

---

[1] ORS 164.405(1) provides, in part:

"A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"* * * * *

"(b) Is aided by another person actually present."

[2] Defendant also raises three other assignments of error, each of which challenges the trial court's instruction, corresponding to ORS 136.450(1), that, as to each of the charged counts, the jury could convict upon a concurrence of 10 jurors. Specifically, defendant contends that "a conviction of [a] crime by a less-than-unanimous jury violates the right to trial by jury in criminal cases specified by the Sixth Amendment[.]" Defendant acknowledges that the United States Supreme Court "decided that issue contrary to defendant's position 33 years ago" in *Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972) (plurality opinion), and *Johnson v. Louisiana*, 406 US 356, 92 S Ct 1620, 32 L Ed 2d 152 (1972). Nevertheless, defendant asserts that "recent constitutional developments, social studies, and changes in the law, require a reevaluation" of those holdings. We respectfully decline that invitation without further discussion.

426-27, 927 P2d 1073 (1996). In determining whether instructional error requires reversal, we consider the jury instructions as a whole in assessing potential prejudice. *See, e.g., State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990).

This appeal and *Jackson* both involved a robbery at the Hood River Wal-Mart store where, according to the state's evidence, Jackson acted as the principal robber and defendant drove the getaway car. In *Jackson*, consistently with the standards for reviewing the denial of an MJOA, we described the operative facts:

"On May 18, 2004, [Jackson] and [defendant] drove together from Portland to the Hood River Wal-Mart store. As [defendant] sat in the car in a 'no parking' zone, with the engine running, [Jackson] approached the victim, who was standing outside, in front of the store. The distance from the car to where [Jackson] encountered the victim was roughly 25 feet. [Jackson] grabbed the victim's purse—and, when the victim did not immediately let go, [Jackson] knocked her to the ground and struggled with her for between 10 and 15 seconds until the purse strap broke. [Jackson] began to run with the purse, leaving the victim on the ground, and, as he did so, [defendant] put the car in motion with the passenger side door open. In seconds, [Jackson] jumped into the moving car, and he and [defendant] sped away. They were eventually apprehended."

212 Or App at 53-54.[3]

Based on that incident, the state charged defendant (and Jackson) with several crimes, including second-degree robbery, ORS 164.405(1)(b), second-degree theft, ORS 164.045, and fourth-degree assault, ORS 163.160. Count 1 of the indictment, charging second-degree robbery, provided as follows:

"The defendant * * * acting together with * * * Jackson, did unlawfully and knowingly while in the course of committing theft, with the intent of preventing and overcoming resistance to defendant's taking of property and retention of the property after the taking, and being aided by another

---

[3] Defendant and Jackson were tried together, so the evidentiary record in the two cases was virtually identical.

person actually present, use physical force upon [the victim]."

Defendant and Jackson were tried together. Jackson waived a jury trial, but defendant did not. After the state presented its case, defendant, like Jackson, moved for a judgment of acquittal, arguing that he could be found guilty of, at most, third-degree robbery. After a lengthy discussion, the trial court denied that motion.

After the close of the evidence, the court and counsel engaged in a protracted colloquy concerning proposed jury instructions on the elements and proof of second-degree robbery. That discussion touched on both direct liability and accomplice liability pursuant to ORS 161.155(2)(b).[4] Specifically, the state contended, and defendant disputed, that defendant could be convicted either because of his own violation of ORS 164.405(1)(b) or because he aided and abetted *Jackson's* violation of that statute. Ultimately, the court declined to instruct the jury on the state's alternative, aiding and abetting, theory with respect to second-degree robbery. Indeed, although the court did instruct the jury on aid and abet liability with respect to the theft and assault charges against defendant, it explicitly informed the jury that those instructions pertained solely to those charges.

With respect to defendant's direct liability under ORS 164.405(1)(b), the court, over defendant's counsel's objection, gave the following instruction:

"In this case to establish the crime of Robbery in the Second Degree the State must prove beyond a reasonable doubt the following elements: the act occurred in Hood River County, Oregon; the act occurred on or about May 18, 2004; [defendant], by intentionally aiding and abetting Luke

---

[4] ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

Jackson, or Mr. Jackson, committed theft; *that physical force was used* upon [the victim]; *that the physical force was used with the intent of overcoming resistance to the theft of her property*; and [defendant] was present and was aided by another person actually present.

"* * * * *

"I further instruct you that the term 'aided by another person actually present' as used in the instruction defining Robbery in the Second Degree, means aided by a person who is close enough to be in a position to aid in exerting force upon the victim."

(Emphasis added.) Thus, the only reference to "aiding and abetting" in the court's instruction regarding second-degree robbery was to the effect that defendant's aiding and abetting of the theft underlying the predicate third-degree robbery could, in turn, be used to establish an element of defendant's direct liability for second-degree robbery under ORS 164.405(1)(b).

Defendant objected to the court's instruction—and, specifically, to the italicized language—because it did not specify "by whom the physical force was used." According to defendant, the court should have instructed the jury that it could not convict him of second-degree robbery unless it found that he had personally used force upon the victim. That is, defendant contended that the instruction was erroneous and misleading in that it allowed the jury to convict him of second-degree robbery under ORS 164.405(1)(b) even if it found that someone else, *viz.*, Jackson, and not defendant, had used physical force against the victim in committing the predicate theft. The jury subsequently convicted defendant.

On appeal, defendant, as noted, assigns error both to the denial of his MJOA on second-degree robbery and to the court's instruction on second-degree robbery.[5] There is considerable overlap between the arguments that he advances in

---

[5] The state does not cross-assign error to the court's refusal to instruct the jury on the state's alternative theory that defendant could be convicted of second-degree robbery based on aiding and abetting Jackson's violation of ORS 164.405(1)(b). *Accord State v. Pine*, 336 Or 194, 207-08, 208 n 6, 82 P3d 130 (2003) (*Pine II*) (noting, in analogous circumstance, that state had failed to cross-assign error to court's failure to give requested instruction on "aid-and-abet" theory of liability based on ORS 161.155(2)(b) and, thus, declining to review on appeal state's alternative argument for affirmance).

support of each of those assignments of error—at points they are completely congruent, with defendant's brief presenting "combined" argument on both assignments. Nevertheless, each assignment of error is functionally distinct—and, critically, as described below, defendant, in moving for the MJOA, failed to raise one crucial contention that he did, in fact, later raise and preserve in objecting to the jury instructions.

Whether pertaining to the denial of the MJOA, the content of the jury instructions, or both, defendant's arguments on appeal ultimately implicate the proper interplay between two statutes. First, ORS 164.405 provides, in part:

"(1)   A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"* * * * *

"(b)   Is aided by another person actually present."

Second, ORS 164.395, which defines the predicate crime of third-degree robbery, provides, in part:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft * * *."

In arguing that the court erred in denying his MJOA, defendant advances two overarching, alternative arguments. *First*, as amplified below in our discussion of the asserted instructional error, defendant contends that he could not be convicted of second-degree robbery because the state failed to present any evidence that he personally "use[d] * * * physical force" upon the victim of the predicate theft, ORS 164.395(1), and, in fact, only Jackson used such force. That is so, defendant reasons, because (1) the defendant's

"violation" of ORS 164.395 is an element of ORS 164.405(1)(b); and (2) he did not "violate" ORS 164.395 by engaging in conduct proscribed under that statute—rather, he merely aided and abetted *Jackson's* violation of ORS 164.395. In a related sense, defendant contends that ORS 164.405(1)(b) contemplates that only the "principal" robber, *i.e.*, Jackson, is to be liable for second-degree robbery; that is, that such liability does not extend to "another person actually present" who merely "aids" the robbery by virtue of his proximate presence. Again, in defendant's view, such a person is liable only for aiding and abetting a robbery in the third degree.

■    The state responds, and we agree, that defendant, in seeking the MJOA, did not raise that contention and, thus, that contention is not preserved for purposes of our review of the denial of the MJOA. The colloquy between the court and counsel on the MJOA was extremely protracted, convoluted, and sometimes circuitous. It would not benefit the bench, the bar, or the public to recount that discussion in detail.

It suffices to say that, although there may have been, at some points in that colloquy, glimpses of the substance of the argument that is now coherently proffered on appeal, they were, at best, implicit—allusion, not argument.[6] Rather, the pervasive theme and persistent thrust of the argument focused on the meaning of "actually present" in ORS 164.405(1)(b) and on a variation of accomplice liability that is inapposite. In sum, counsel's argument in support of the MJOA did not cogently "alert[ ] the trial judge and opposing counsel to the substance of the position that is advanced on appeal." *State v. Taylor*, 198 Or App 460, 469, 108 P3d 682, *rev den*, 339 Or 66 (2005); *see State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (to satisfy preservation requirement, trial counsel is required to "provide the trial court with an explanation of his * * * objection that is specific enough to ensure

---

[6] We imply no criticism of counsel, much less of the trial court. As will become apparent shortly, even without the split-second demands and pressures of trial practice and even with the benefit of appellate hindsight, the law in this area is anything but easy.

that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted").

■     *Second*, with respect to the MJOA, defendant contends that, in all events, ORS 164.405(1)(b) requires the "actual presence" of at least two perpetrators and the state failed to prove that he was "actually present" within the meaning of the statute. Defendant's arguments in that regard are identical to those previously unsuccessfully advanced by his coperpetrator. In *Jackson*, we rejected Jackson's challenge to the denial of his MJOA, concluding that a question of fact existed with regard to whether defendant (Rennells) was "actually present" so as to find the defendant there (Jackson) guilty of second-degree robbery. Specifically, we held that, based on the evidence presented, a finder of fact could conclude that defendant (Rennells) was " 'within reach, sight or call' as to present an immediate 'added threat to the victim's safety.' " *Jackson*, 212 Or App at 57 (quoting *State v. Miller*, 14 Or App 608, 611, 513 P2d 1199 (1973)). We adhere to that reasoning.

■ ■     Defendant's argument in support of his second assignment of error, challenging the court's instruction on second-degree robbery, substantially tracks his first appellate argument pertaining to the MJOA.[7] Specifically, as noted, defendant contends that a person cannot be held directly liable under ORS 164.405(1)(b) unless he or she personally used, or attempted to use, physical force against the victim and that the court's instruction, *see* 213 Or App at 427-28, was erroneous as misleading because it permitted the jury to convict defendant based on *Jackson's* use of force.

Based on our review of the record, we conclude that, unlike in the context of the MJOA, that contention was so

---

[7] Defendant also asserts that the trial court should have instructed the jury that it could find that defendant was "actually present" for purposes of ORS 164.405(1)(b) only if it found that defendant had the *subjective purpose* of "reinforcing" Jackson in the commission of the robbery. As in *Jackson*, where an identical contention was raised for the first time on appeal in challenging the denial of the MJOA, that argument was not raised and preserved in objecting to any instruction, or the failure to give any proposed instruction, in this case. Accordingly, we will not review that contention. *See Jackson*, 212 Or App at 55.

cogently raised in the subsequent colloquy concerning jury instructions as to preserve the matter for our review.[8] Specifically, Jackson's counsel, whom the court permitted to participate in the colloquy, advanced the following arguments, in which defendant's counsel concurred:

"[JACKSON'S ATTORNEY]: * * * Under [robbery] II the person that's charged with [robbery] II to be convicted first has to be—has to be guilty of [robbery] III—

"* * * * *

"[JACKSON'S ATTORNEY]: * * * Robbery [II] that says, 'A person * * * commits the crime of Robbery in the Second Degree if the person violates ORS 164.395 and'—

"* * * * *

"[JACKSON'S ATTORNEY]: Okay, you look at [ORS] 164.395, it applies only to a person who actually uses or threatens to use the force. Except if you get into the generic—generic accomplice testimony.

"* * * * *

"[JACKSON'S ATTORNEY]: * * * [T]o find him guilty of [robbery] III you have to [apply an accomplice theory] because [defendant] didn't use the force. So the only way it can go against him—the only way you can get up to [robbery] II is the State trying to use this generic—this generic accessory [theory]. Because he did not use the force. He could not be—it could not be aggravated up to against him. He can't be—the accessory can't be his own principal.

"* * * * *

"[JACKSON'S ATTORNEY]: * * * It has to be the person who actually does the force—

"THE COURT: Well, we're dealing with Robbery II though, aren't we?

"[JACKSON'S ATTORNEY]: Yeah, the first one. But Robbery II only applies to someone who has violated Robbery III to begin with.

---

[8] After the court denied both defendant's and Jackson's MJOAs, each presented his case-in-chief, consisting of testimony by the same witness. The colloquy on jury instructions followed, and, in that context, defendant did not attempt to revisit the denial of the MJOA.

"THE COURT:  Right.

"[JACKSON'S ATTORNEY]:  And that person has to be the person who actually used the force.

"Now, what they're trying to do is saying he's vicariously liable for Mr. Jackson's force, so therefore that bootstraps it up against him, [defendant], to be charged with [robbery] II. He can't—he's the accomplice. He cannot be accomplice to himself. Because he didn't use the force."

Notwithstanding those arguments, the court instructed the jury as noted. Thereafter, defendant's counsel reiterated his objection that the instruction failed to specify "by whom the force was used." Thus, the trial court was sufficiently alerted to the substance of defendant's present challenge to the instruction.

Defendant's challenge to the court's instruction ultimately depends on the premise that, when two defendants, A and B, cooperate in a theft, with both being "actually present," and only A actually uses (or threatens to use) physical force against the victim, only A can be convicted of second-degree robbery under ORS 164.405(1)(b). Concomitantly, in defendant's view, B is liable only for aiding and abetting a third-degree robbery. From that premise, defendant reasons that the court's instruction was erroneous as misleading because the use of the passive voice—*viz.*, "physical force *was used*" (emphasis added)—permitted the jury to convict defendant under ORS 164.405(1)(b), notwithstanding that only Jackson ever used physical force against the victim.

Defendant's fundamental premise depends, in turn, on several predicate assumptions about the proper construction and application of ORS 164.405(1)(b). *First*, only the person who actually employed force, or threatened the use of force, in committing the predicate theft can properly be deemed to have "*violated* ORS 164.395" (emphasis added) for purposes of ORS 164.405(1)(b).

*Second*, the other "actually present," but otherwise passive, coperpetrator merely *aids* that "violation" and, of logical necessity, is not "*aided by* another," as required under ORS 164.405(1)(b). Bluntly: In such circumstances, the "aider" cannot also, and simultaneously, be the "aidee."

*Third,* to apply ORS 164.405(1)(b) to a person in defendant's circumstances would effectuate an impermissible "double dipping" by which

> "defendant's conduct in aiding Jackson's robbery could be used twice—first to aggravate Jackson's conduct into robbery in the second degree and, then, to convert defendant's aid and abet liability on the robbery in the third degree into an aid and abet for robbery in the second degree."

The state's response is unadorned: (1) Defendant, by aiding and abetting Jackson's use of force against the victim of the theft, "violat[ed] ORS 164.395"; and (2) defendant (who was himself "actually present") was "aided" in his violation of ORS 164.395 "by another person actually present," *viz.,* Jackson.

Defendant's arguments substantially partake, at least implicitly, of aspects of the lead dissent in *State v. Pine,* 181 Or App 105, 45 P3d 151 (2002) (affirmed by equally divided court) *(Pine I), rev'd,* 336 Or 194, 82 P3d 130 (2003); *see Pine I,* 181 Or App at 118-23 (Haselton, J., dissenting). In *Pine I,* this court divided evenly on an ostensibly analogous issue involving the enhancement, under ORS 163.165(1)(e), of fourth-degree assault to third-degree assault.[9] Conversely, the state contends that *Pine I* is inapposite, not only because the Supreme Court ultimately did not endorse any of our contending positions, but, more importantly, because of material differences between the operative language of the assault statute at issue in *Pine I* and ORS 164.405(1)(b) here.

Before addressing the substance of the parties' arguments regarding the operation of ORS 164.405(1)(b), we emphasize two critical caveats. Both pertain to what is *not* at

---

[9] Specifically, in *Pine I,* we addressed whether an accomplice to an assault who was "actually present" but who did not actually "cause[ ] physical injury to another," could be liable under ORS 163.165(1)(e) for third-degree assault or was liable only for aiding and abetting a fourth-degree assault. As noted, the defendant's conviction for third-degree assault was affirmed by an equally divided court. 181 Or App at 105-a; *see* 181 Or App at 106-13 (Wollheim, J., concurring, joined by Deits, C. J., Linder, J., and Ceniceros, S. J.); *id.* at 113-18 (Edmonds, J., concurring); *id.* at 118-23 (Haselton, J., dissenting, joined by Landau, Armstrong, Kistler, and Brewer, JJ.); *id.* at 123-24 (Armstrong, J., dissenting). In *Pine II,* the Supreme Court reversed the defendant's third-degree assault conviction without addressing the merits of our contending positions.

issue in this case—and, by extension, to what we do *not* purport to decide.

*First*, this case, and our discussion that follows, pertains solely to a defendant's *direct* liability for violating ORS 164.405(1)(b). We appreciate that the term "direct" may be somewhat imprecise, but we employ it in contradistinction to "aiding-and-abetting" or "accomplice" liability. *See generally* ORS 161.155 (concerning criminal liability for conduct of another). As noted previously, the state here did not cross-assign error to the trial court's refusal to instruct the jury on the theory that defendant could be convicted of second-degree robbery if he aided and abetted Jackson's violation of ORS 164.405(1)(b). *See* 213 Or App at 428 n 5. Thus, the state here is in approximately the same position as in *Pine*—and, for the same reasons identified in *State v. Pine*, 336 Or 194, 207-08, 208 n 6, 82 P3d 130 (2003) (*Pine II*), we do not consider the availability in this context of "aid-and-abet" liability of the sort explored in Judge Edmonds's concurrence in *Pine I*. *See* 181 Or App at 113-18 (Edmonds, J., concurring).

*Second*, we do not revisit the correctness of any of the contending positions in *Pine I*. To be sure, certain features of this dispute resemble aspects of *Pine*. Nevertheless, the robbery statutes at issue here and the assault statutes in *Pine* are substantially different in both their texts and their legislative histories. Whatever the "correct" analysis in *Pine*, those differences are decisive here.

We begin with the statutory text. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). A person is guilty of second-degree robbery under ORS 164.405(1)(b) "if the person *violates* ORS 164.395 and the person * * * [i]s *aided by* another person actually present." (Emphasis added.) "Violate," as generally used in Oregon statutes, "*includes* failure to comply." ORS 174.100(9) (emphasis added). That definition, by its terms, is not exclusive. In common usage, "violate" means:

"[T]o fail to keep : BREAK, DISREGARD ⟨~ the law⟩[.]"

*Webster's Third New Int'l Dictionary* 2554 (unabridged ed 2002).

Those definitions of "violate" are sufficiently general to, at least arguably, encompass both "direct" and "accomplice" /aiding-and-abetting criminal liability. That is, unless "violates" is somehow contextually restricted, one can "violate" the third-degree robbery statute either by (as pertinent here) using or threatening the use of physical force against the victim of a theft or by aiding and abetting another person who does.

Two aspects of statutory context suggest, however, that "violates ORS 164.395" may, in fact, have a more restrictive scope. Specifically, that term may pertain only to someone whose conduct renders him or her directly liable under ORS 164.395, as opposed to liable for someone else's conduct in violation of that statute.

First, "violates" in ORS 164.405(1) is appropriately viewed in the totality of that subsection, as well as in the context of the parallel "violates" construct in the first-degree robbery statute, ORS 164.415. ORS 164.405(1) provides:

"A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"(a)  Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b)  Is aided by another person actually present."

ORS 164.415(1) provides:

"A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a)  Is armed with a deadly weapon; or

"(b)  Uses or attempts to use a dangerous weapon; or

"(c)  Causes or attempts to cause serious physical injury to any person."

As a matter of syntax, structure, and function, by far the most plausible referent—and perhaps the only plausible referent—for the enhancing circumstances identified in ORS 164.405(1)(a) and ORS 164.415(1)(a) to (c) is the person who actually, physically commits the predicate third-degree robbery. That is, in prescribing direct liability, those enhancing

elements most plausibly pertain to conduct undertaken during the actual commission of the third-degree robbery, *e.g.*, the robber threatens the victim, uses a dangerous weapon, or causes serious physical injury—or to conditions also heightening the danger and risk associated with the robbery, *e.g.*, the robber is armed with a deadly weapon.

Second, the juxtaposition of the *"aided by* another" language in ORS 164.405(1)(b) (emphasis added) also plausibly limits the universe of those who "violate[ ] ORS 164.395" to persons who actually, physically engage in the conduct proscribed by ORS 164.395. In common usage, to "aid" means "to give help or support to : FURTHER, FACILITATE, ASSIST * * * : contribute to ‹finances are *[aid]ed* by rummage sales› * * * : to give assistance : be of use : HELP ‹he *[aid]ed* in the attempt› **syn** see HELP[.]" *Webster's* at 44 (boldface and emphasis in original).

Defendant contends, not unreasonably, that, in the circumstances presented here—with two "actually present" coperpetrators, one who "actively" commits the robbery, and the other who merely remains in such physical proximity as to be able to intervene if necessary—the former is "aided by" the latter, and not vice versa. Thus, defendant argues, because the person who "violates ORS 164.395" must be the same person who "[i]s aided by another person actually present," only the "active" robber can properly be deemed to be the directly culpable "violator."

Conversely, the state suggests that, in those circumstances (*i.e.*, the circumstances of this case), each of the "actually present" defendants is, in fact, "aiding" the other's "violation" of ORS 164.395. That is, if—as the state posits—defendant "violate[d] ORS 164.395" by virtue of aiding and abetting Jackson's commission of the predicate robbery, defendant was "aided by" Jackson in that "violation." That is so, the state suggests, because but for Jackson's participation there would have been no third-degree robbery for defendant to aid and abet.

On balance, we find defendant's contextual arguments to be compelling. The design of ORS 164.405(1), particularly the "aided by" formulation and the parallel context of ORS 164.415(1), strongly suggests that the legislature

intended only those who "actively" engage in the conduct proscribed by ORS 164.395 be deemed to have "violate[d] ORS 164.395" for purposes of ORS 164.405(1). That, in turn, would render the disputed jury instruction erroneous because it permitted the jury to find defendant directly culpable under ORS 164.405(1)(b) based on Jackson's conduct, notwithstanding that defendant himself had not, in fact, "violate[d] ORS 164.395."

Still, the statutory context, while strongly suggestive, is not conclusive. The state's construction is not unreasonable. Accordingly, we turn to the legislative history and, particularly, to the pertinent portions of the Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 148-50 (July 1970).

ORS 164.405(1)(b) was enacted as part of the omnibus 1971 criminal code revisions. Or Laws 1971, ch 743, § 149. Three aspects of the Commentary pertaining to paragraph (1)(b) are instructive and enlightening. First, the Commentary describes that provision's purpose:

"The primary rationale behind paragraph (b) of subsection (1) * * * is the increased danger of an assault on the victim *when the robber is reinforced by another criminal who is actually present.* Furthermore, when two or more persons commit the crime, it indicates greater planning and more likelihood that they are professional criminals."

Commentary § 149 at 155 (emphasis added).

Second, the Commentary explained the proper application of paragraph (1)(b)—and, particularly, contrasted the consequences of "actually present" assistance as opposed to generic "aid and abet" liability:

"It is important to note * * * that *inclusion of the factor of actual aid by another person does not affect the doctrine of vicarious responsibility of accomplices for the general acts of the principal.* This matter is handled in the general provisions of [the proposed code] covering complicity. The language employed is intended to include only those situations in which the accomplice is in such proximity of the victim that he is in a position to assist in exerting force upon the victim."

*Id.* (citation omitted; emphasis added).

Finally, the Commentary described the relationship of the proposed revisions to then-extant Oregon law:

"As provided [under then-current statutes], the single factor that aggravates robbery is that of being armed with a dangerous weapon. As noted previously, that factor is retained, but in terms of a 'deadly weapon,' and four new factors are added. *The crime becomes second-degree robbery if the* **actor** represents that he is armed or if he is aided by an accomplice actually present. The crime is enhanced to first-degree status if *the* **actor** is armed with a 'deadly weapon,' or uses or attempts to use a 'dangerous weapon,' or if he causes or attempts to cause serious physical injury to any person."

*Id.* § 149 at 156 (boldface and emphasis added).

■ Each of the emphasized references in the Commentary corroborates defendant's construction of ORS 164.405(1)(b). Specifically, as pertinent here, only a person who actually engages in the conduct constituting third-degree robbery—an "actor" or "robber" in the Commentary's rubric—"violates ORS 164.395" for purposes of ORS 164.405(1)(b). Consequently, only such a person, and not a coperpetrator who merely aids and abets the predicate third-degree robbery through his or her "actual presence," can be directly culpable for second-degree robbery.

■ The challenged instruction in this case was erroneous in that it permitted the jury to render a verdict that did not comport with those principles of direct culpability under ORS 164.405(1)(b). *See* 213 Or App at 427-28 (setting out instruction in full). In particular, given the phrasing of that instruction—*e.g.*, "physical force *was used*" (emphasis added)—the jury could convict defendant of second-degree robbery based not on his own conduct but, instead, on Jackson's commission of the predicate third-degree robbery, including Jackson's use of force against the victim. Given the parties' proof, that defect in the instruction may well have been decisive. Accordingly, we reverse and remand defendant's conviction for second-degree robbery.

Conviction for robbery in the second degree reversed and remanded; sentences vacated and remanded for resentencing; otherwise affirmed.