**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**STEVEN SANG HO RHEE,**
*Defendant-Appellant.*

Washington County Circuit Court
C122744CR, C11435CR;
A154592 (Control), A154414

353 P3d 38

Peter Gartlan, Chief Defender, and Ingrid A. MacFarlane, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant appeals judgments in two criminal cases. In one of those cases, Washington County C122744CR, defendant was convicted of attempted first-degree robbery, attempted second-degree robbery, unlawful use of a weapon (UUW), unlawful delivery of methamphetamine, and unlawful possession of methamphetamine. In the second case, Washington County C111435CR, defendant's probation on other, earlier convictions was revoked based on his new convictions in case C122744CR. In this consolidated appeal, defendant challenges his conviction for attempted second-degree robbery in case C122744CR, making an unpreserved argument that the trial court should have entered a judgment of acquittal on that charge based on the reasoning in *State v. Rennells,* 213 Or App 423, 162 P3d 1006 (2007).[1] Defendant also argues that the trial court erred by not merging the guilty verdicts for UUW and attempted first-degree robbery into a single conviction. Finally, defendant argues that the trial court erred by ordering him to pay attorney fees in the amount of $1100 and $230; that was an error, defendant contends, because the record includes no evidence of his ability to pay fees.

We reject without written discussion defendant's argument that the trial court plainly erred, under *Rennells,* by not entering a judgment of acquittal on the charge of attempted second-degree robbery. Furthermore, reviewing for legal error, *State v. Burris,* 270 Or App 512, 514, 348 P3d 338 (2015), we reject defendant's merger argument for the reasons set out below. However, we agree with defendant that the trial court plainly erred when it ordered him to pay attorney fees, and we exercise our discretion to correct that error. Accordingly, we reverse the portions of the judgments

---

[1] As pertinent here, ORS 164.405(1) provides that a person commits second-degree robbery if the person violates ORS 164.395 and the person is "aided by another person actually present." ORS 164.395 defines third-degree robbery, essentially, as the use of force in association with a theft or attempted theft. We held in *Rennells* that "only a person who actually engages in the conduct constituting third-degree robbery *** 'violates ORS 164.395' for purposes of ORS 164.405" and concluded, therefore, that "only such a person, and not a coperpetrator who merely aids and abets the predicate third-degree robbery through his or her 'actual presence,' can be directly culpable for second-degree robbery." 213 Or App at 439.

that require defendant to pay attorney fees, and we otherwise affirm.

We summarize the pertinent facts in the light most favorable to the state. *State v. Gray*, 240 Or App 599, 601, 249 P3d 544, *rev den*, 350 Or 574 (2011). Defendant and another man, Forest Aleg, drove to an apartment complex to confront a person whom defendant believed owed him money. Two knives were in the car that the men drove. While they waited to confront the purported debtor, defendant and Aleg saw another man, Griffin, walking through the parking lot, carrying a large backpack. Unbeknownst to them, Griffin had a handgun in the backpack, for which he had a concealed weapons permit. Aleg told defendant that he wanted to see what was in Griffin's backpack. Aleg also told defendant to get the knives out of the car, which defendant did, and the two men started following Griffin. At some point, Aleg also said to defendant, "you got my back."

After Griffin noticed that he was being followed, he retrieved his gun from his backpack and put it in his coat pocket. At some point, defendant and Aleg went in different directions; as they parted ways, each man began talking on a cell phone. Aleg kept following Griffin, who repeatedly, but unsuccessfully, told Aleg to stop following him. At some point, Griffin called 9-1-1, but the dispatcher did not deem the call to be urgent, and no officer responded immediately. Griffin stopped walking after a time because he was approaching a particularly dark area and was concerned that defendant was going to approach him from a different direction, to trap Griffin between defendant and Aleg. While Griffin was still on the phone with the 9-1-1 dispatcher, he saw Aleg emerge from shadows. Griffin took his gun out of his pocket and pointed it at Aleg's feet. Aleg then started walking very quickly toward Griffin, who said, "Get away from me." Aleg kept coming, and Griffin fired the gun, but missed. Aleg kept walking toward Griffin, threatening to kill him or to cut his heart out. Griffin repeatedly yelled at Aleg to get away from him, and shot Aleg twice. Aleg ran away, but died by some nearby bushes. The 9-1-1 dispatcher heard that exchange and directed officers to the scene.

About one minute after the shooting, a deputy sheriff spotted defendant nearby. Defendant told the deputy that he had been walking with a friend named Forest, whose last name he did not know. Defendant said that he was unfamiliar with the area and had become separated from Forest and gotten lost. The next morning, two knives were found near where Aleg had died. Testing revealed the presence of defendant's DNA on one of those knives. After later questioning by police, defendant eventually acknowledged that he had retrieved the knives from the car when he and Aleg began following Griffin. Defendant told an officer that he had tried to give the knives to Aleg, who would not take them, so defendant tossed them into a ditch at a particular location. That location is not where the knives were found; rather, they were found close to Aleg's body.

Defendant was charged in case number C122744CR with five crimes: attempted first-degree robbery (ORS 164.415), attempted second-degree robbery (ORS 164.405), UUW (ORS 166.220), unlawful delivery of methamphetamine (ORS 475.890), and unlawful possession of methamphetamine (ORS 475.894). The jury convicted defendant of all charges.

At the beginning of the sentencing hearing, defendant argued that "unlawful use of a weapon merges with *** attempted robbery in the first degree." In support of that argument, defendant asserted that the elements of UUW "would be encompassed within the attempted robbery in the first degree statute." The state responded that the two crimes did not merge because "both have separate elements that the other one does not contain[.]" The trial court agreed with the state and, therefore, denied defendant's request for merger. The court sentenced defendant to prison and post-prison supervision on each of the convictions, resulting in a total period of incarceration of 48 months. The court also ordered defendant to pay fines and $1,100 in court-appointed attorney fees. Based on the new convictions in case number C122744CR, the court revoked defendant's probation in case number C111435CR; in conjunction with that probation revocation, the court ordered defendant to pay $230 in court-appointed attorney fees.

On appeal, defendant renews his argument that the guilty verdicts for attempted first-degree robbery and unlawful use of a weapon should have merged under ORS 161.067(1), which provides:

> "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

Defendant does not base his merger argument on a contention that the crimes of UUW and attempted first-degree robbery do not involve violation of two distinct "statutory provisions." Rather, he argues that merger is required because, "[a]s pleaded in this case, * * * all of the elements of the [UUW] count were subsumed within the elements of the attempted robbery in the first degree count." In other words, defendant asserts, the crimes of UUW and attempted first-degree robbery—as pleaded in this case—are not "separately punishable offenses" because each crime does *not* "require[] proof of an element that the other[] do[es] not." ORS 161.067(1).

The principles that govern our analysis of defendant's argument under ORS 161.067(1) are well settled.

> "The elements of proof of a criminal offense are controlled by the statute defining the offense, not by the factual circumstances recited in the indictment. However, when a statute contains alternative forms of a single crime, we will look to the indictment to determine which form is charged, and we use the elements of the charged version in the merger analysis."

*Burris*, 270 Or App at 517 (citations, internal quotation marks, and ellipses omitted).

Thus, we start by examining the elements of UUW and attempted first-degree robbery as those crimes are statutorily defined, then consider how the crimes were charged in this case. We begin with attempted first-degree robbery. The completed crime of first-degree robbery is defined by ORS 164.415(1):

"A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a)   Is armed with a deadly weapon;

"(b)   Uses or attempts to use a dangerous weapon; or

"(c)   Causes or attempts to cause serious physical injury to any person."

The referenced third-degree robbery statute—ORS 164.395—provides, in part:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft * * *."

Those statutes describe several alternative sets of circumstances—of elements of the crime—that can lead to a first-degree robbery conviction. In this case, defendant was charged with *attempted* first-degree robbery and, therefore, could be convicted if the jury was persuaded that he had "intentionally engage[d] in conduct which constitute[d] a substantial step toward commission of" first-degree robbery in any of those forms. ORS 161.405(1). However, we need not consider all the possible permutations of circumstances that may constitute attempted first-degree robbery because the indictment in this case narrows the elements that are pertinent to the merger analysis. *Burris*, 270 Or App at 517.

The state charged defendant with first-degree robbery as follows:

"The defendant, on or about October 2, 2012, in Washington County, Oregon, did unlawfully and intentionally attempt the following: while in the course of committing theft of property, threaten the immediate use of physical force upon * * * Griffin and did use a dangerous weapon with intent of preventing and overcoming resistance to the taking of the property."

Thus, as attempted first-degree robbery was charged in this case, the state was required to prove that

(1)  defendant intentionally took a substantial step toward:

(2)  while, in the course of committing theft of property,

(3)  threatening the immediate use of physical force upon Griffin,

(4)  using a dangerous weapon with the intent of preventing and overcoming resistance to the taking of property.

Those are the elements that are pertinent to the merger analysis.

We turn to the elements of UUW, as charged in this case, to determine whether—as defendant contends—all elements of that crime are subsumed within the elements of attempted first-degree robbery as charged. The indictment charged defendant with UUW under ORS 166.220[2] as follows:

"The defendant, on or about October 2, 2012, in Washington County, Oregon, did carry and possess a dangerous weapon, to wit: a knife, with intent to use it unlawfully against * * * Griffin."

Thus, the elements of UUW as charged are:

(1)  defendant carried and possessed a knife

(2)  with intent to use it unlawfully against Griffin.

As noted, defendant contends that those two elements are subsumed within the elements of attempted first-degree robbery as charged in this case. His argument proceeds from the premise that the attempted first-degree robbery charge necessarily—if implicitly—included an allegation that defendant possessed the knife, which was the only dangerous weapon involved in this case:

"In charging defendant with attempted robbery in the first degree by attempting to use a dangerous weapon,

---

[2] ORS 166.220(1) provides, as relevant here, that a person commits UUW if the person "carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015[.]"

the state also charged defendant with unlawful use of a weapon by carrying and possessing a dangerous weapon. That is because in alleging that defendant only attempted to use the dangerous weapon for its attempted robbery in the first degree theory, the state did not allege actual use of the weapon but instead alleged a substantial step toward use of the weapon. A substantial step toward use of the weapon necessarily included possession of the weapon."

Because the attempted first-degree robbery charge necessarily alleged that defendant possessed the knife, defendant concludes, that charge subsumed the elements of UUW.

In response, the state contends that defendant's argument is flawed because a person may attempt to commit first-degree robbery without ever possessing the weapon that would have been used in that crime, had it been completed:

"'A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime.' ORS 161.405(1). Accordingly, a person could be liable for attempting to use a dangerous weapon to commit a robbery without carrying or possessing the weapon by taking a substantial step towards committing the crime by planning, soliciting, or facilitating an armed robbery."

Thus, the state argues,

"[b]ecause a person can commit attempted [first]-degree robbery with a knife without possessing or carrying a knife, [defendant] has failed to demonstrate that all of the elements of UUW are subsumed within attempted [first]-degree robbery. Put differently, the UUW statute requires proof of an element that attempted [first]-degree robbery does not—the element requiring proof of 'carr[ying] or possess[ing]' a 'deadly or dangerous weapon.' ORS 166.220(1)(a)."

We agree with the state. The fundamental flaw in defendant's argument is his assumption that, by alleging that defendant committed attempted first-degree robbery, the state necessarily also alleged—first—that defendant attempted to use the knife, and—second—that defendant possessed the knife while attempting to use it. But a person

can take a substantial step toward committing first-degree robbery without ever possessing the dangerous weapon that he or she anticipates will be used to commit that crime. *Cf. State v. Lawrence*, 231 Or App 1, 4-5, 217 P3d 1084 (2009), *rev den*, 347 Or 533 (2010) (possession of controlled substances "is not necessary to prove an attempted transfer of a controlled substance"; the defendant attempted delivery of controlled substances by arranging a "transfer[ of] cocaine from one person to another"). For example, a person who carefully planned for and prepared to commit an armed robbery—by finding an accomplice from whom the person intended to obtain a dangerous weapon, scouting the scene of the planned robbery, and proceeding to the scene on the planned day of the crime, where the person intended to get the weapon from his or her accomplice—presumably could be convicted of attempted first-degree robbery even though he or she never actually took possession of the weapon. *Cf. State v. Johnson*, 202 Or App 478, 123 P3d 304 (2005), *rev den*, 340 Or 158 (2006) (the defendant's solicitation of another person—who claimed to be expert with a gun—to kill the defendant's family members was sufficient to support convictions for attempted aggravated murder, where the defendant instructed the other person on the location where she should shoot the victims).

Finally, we observe that it does not matter that, in this case, the state elicited evidence from which a jury could find that defendant did, in fact, possess a knife during the course of the attempted robbery. "In determining whether statutory provisions require 'proof of an element that the others do not,' ORS 161.067(1), we examine only the statutory elements of each offense, not the underlying factual circumstances recited in the indictment." *State v. Fujimoto*, 266 Or App 353, 357, 338 P3d 180 (2014). We also do not examine what facts may have been proved at trial. *See State v. Alvarez*, 240 Or App 167, 172, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011) ("[O]nce we rely on the indictment to determine which of the alternative forms of the crime are at issue, we disregard particular facts alleged in the indictment or proved at trial."). The trial court did not err when it declined to merge the guilty verdicts for attempted first-degree robbery and UUW.

We turn to defendant's argument that the trial court plainly erred, in both of these consolidated cases, by ordering defendant to pay fees for his court-appointed counsel without first considering his ability to pay. Defendant asserts that the records in these cases include no evidence regarding his financial status, employment history, or ability to earn income. Conversely, he points out, the records do demonstrate that he has been addicted to methamphetamine, has a significant criminal history, and will now be imprisoned for four years. Defendant acknowledges that he did not object to the imposition of attorney fees below, but he argues that, given the circumstances, we should exercise our discretion to correct what he contends is plain error. The state concedes the point, explaining that, "[b]ased on the existing factual record, it does not appear that the trial court could have made the necessary finding regarding ability to pay if the issue had been brought to its attention." We agree. *See State v. Chavez*, 263 Or App 187, 326 P3d 629, *rev den*, 356 Or 163 (2014) (requiring a defendant to pay court-appointed attorney fees is plain error when the record is silent regarding the defendant's ability to pay those fees); *State v. Coverstone*, 260 Or App 714, 320 P3d 670 (2014) (same). Furthermore, for the reasons articulated in *Coverstone*, we exercise our discretion to correct the plain error.

In Case Numbers C122744CR and C111435CR, portions of judgments requiring defendant to pay court-appointed attorney fees reversed; otherwise affirmed.