Submitted September 30, remanded for resentencing, otherwise affirmed
December 9, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HENRY JOHN KUESTER,
*Defendant-Appellant.*

Douglas County Circuit Court
13CR1822FE; A155543

364 P3d 685

Peter Gartlan, Chief Defender, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Judge, and Egan, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant was convicted of multiple crimes, including unlawful use of a weapon (UUW) with a firearm, ORS 166.220 and ORS 161.610, and pointing a firearm at another, ORS 166.190. On appeal, defendant assigns error to the trial court's failure to merge the guilty verdicts for UUW with a firearm and pointing a firearm; he also challenges the sentence that the trial court imposed on the conviction for UUW with a firearm. We reject defendant's merger argument, but the state concedes, and we agree, that the trial court plainly erred by imposing a sentence on the conviction for UUW with a firearm that includes an indefinite term of post-prison supervision. Accordingly, we remand for resentencing and otherwise affirm.

We describe defendant's criminal activity to provide context for those facts that are significant to the issues that he raises on appeal. We outline the pertinent facts in the light most favorable to the state. *State v. Rhee*, 271 Or App 746, 749, 353 P3d 38 (2015).

One day in the summer of 2013, deputies and two sergeants from the Douglas County Sheriff's Office went to defendant's home, intending to evict him pursuant to a court order. That order authorized sheriff's office personnel to use reasonable force if necessary to accomplish the eviction. To reach the home, Sergeant Bean cut a padlock on a gate; Bean and another sergeant, Frieze, then drove their patrol cars up a driveway toward the house. The two sergeants tried to hail defendant over a public address system for about 15 minutes, announcing the eviction and asking defendant to come out of the residence. Getting no response, the sergeants and other deputies approached the house cautiously, using a shield and continually announcing their presence. Bean cut a lock on the door and Frieze called inside, asking defendant to come out if he was there. Frieze looked into the house, yelling, "Sheriff's Office." Frieze did not immediately spot defendant but, after he looked in a different direction, he saw defendant pointing a handgun at him. Frieze yelled "gun," and the deputies retreated.

A deputy again hailed defendant over the public address system, directing him to call the sheriff's office

dispatch, which he eventually did. During subsequent conversations with two deputies, defendant said that "he wasn't going to come out" and that, if deputies entered the house, defendant would "have to kill them."

Bean eventually deployed a "flashbang" and then used gas to drive defendant from the house. Bean went inside the house after the gas cleared and found a handgun in the kitchen with a fully loaded magazine and a round chambered.

Defendant was indicted on five counts: UUW with a firearm, menacing, pointing a firearm at another, obstructing governmental or judicial administration, and unlawful possession of a silencer. The case was tried to a jury and the state's witnesses gave testimony consistent with the facts as described above. Defendant testified in his own behalf and asserted, among other things, that the gun he had been holding was not loaded when Frieze looked into the house. The jury convicted defendant of all crimes charged.

The trial court sentenced defendant on the conviction for UUW with a firearm as follows:

**"Incarceration**

"Defendant is sentenced to the custody of Oregon Department of Corrections for a period of 60 month(s). * * *

"Defendant may receive credit for time served. * * * Except as provided in ORS 144.122 and 144.126, the defendant shall not be eligible for work release, parole, temporary leave or terminal leave until the minimum term of imprisonment is served, *less a period of time equivalent to any reduction of imprisonment granted for good time served or time credits earned* under ORS 421.121.

**"Post-Prison Supervision**

"The term of Post-Prison Supervision is 36 month(s) *minus time actually served.* * * *"

(Boldface in original; emphasis added.) The court imposed shorter concurrent sentences on the other convictions.

Defendant raises two assignments of error on appeal, one related to merger of guilty verdicts and one related to

sentencing. Both of the arguments are unpreserved. As defendant acknowledges, an unpreserved argument can present a basis for reversal only if it establishes that the trial court committed error that is "plain," that is,

> "if (1) the error is one of law, (2) the error is 'obvious, not reasonably in dispute,' and (3) the error 'appears on the face of the record,' so that we need not 'go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable.'"

*State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014) (quoting *State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000)). Thus, in addressing defendant's two arguments, we are limited to determining whether those arguments establish obvious error that is apparent on the face of the record.

Because "merger" relates to the number of convictions that should have been included in the judgment—an issue that logically precedes sentencing questions—we address defendant's unpreserved merger argument first. *Cf. State v. Davis*, 265 Or App 425, 433, 335 P3d 322 (2014), *rev den*, 356 Or 837 (2015) ("'merger' is a concept that applies to the merger of multiple guilty verdicts into a single conviction" and "[s]entences themselves do not 'merge'; they are either concurrent or consecutive").

In that regard, defendant contends that the trial court plainly erred when it did not merge the guilty verdicts for UUW with a firearm (Count 1) and pointing a firearm at another (Count 3). That argument is based on ORS 161.067(1), which provides:

> "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

Thus, if each of two crimes includes an element that is not shared by the other crime, then the guilty verdicts do not merge. *See State v. Dentel*, 272 Or App 130, 136, 354 P3d 753 (2015) (discussing the "element-by-element comparison contemplated by ORS 161.067").

In this case, the parties at least implicitly agree that defendant's crimes all occurred within a single criminal episode. Nonetheless, defendant argues, his convictions for UUW with a firearm and pointing a weapon at another should merge because it is *not* true (according to defendant) that each of those crimes requires proof of an element that the other does not.

We recently summarized the legal principles that govern the "elements" question in merger cases, like this one, where one of the crimes involves an allegation under ORS 161.610 that the crime was committed with a firearm:

> "For purposes of the merger analysis, '[t]he elements of proof of a criminal offense are controlled by the statute defining the offense, not by the factual circumstances recited in the indictment.' However, when a statute sets out alternative forms of a single crime, we look to the indictment (and, if necessary, to jury instructions) to determine which form is charged, and we use the elements of the crime as charged in conducting the merger analysis. Finally, and as pertinent here, when the state charges a defendant with an aggravated form of a felony based on an allegation that the defendant used or threatened to use a firearm during the commission of that crime, the 'with a firearm' allegation is an element of the crime for merger purposes. That is, ORS 161.610—the 'gun minimum' statute—not only requires the trial court to impose a particular minimum sentence on a defendant who is convicted of having used or threatened to use a firearm during the commission of a felony, it creates a new, aggravated form of the underlying felony, one element of which is the use or threatened use of a firearm."

*Dentel*, 272 Or App at 133 (internal citations omitted).

Applying those principles here, we first consider the elements of both crimes as charged by the state and explained in the jury instructions. In this case, the elements of UUW with a firearm were (omitting venue):[1]

---

[1] Defendant was charged and tried before the Supreme Court issued its decision in *State v. Mills*, 354 Or 350, 371, 312 P3d 515 (2013), holding that Article I, section 11, of the Oregon Constitution, which "enumerates a defendant's right to a trial in a particular place," does not "require[] the state to prove venue beyond a reasonable doubt as a material allegation of every criminal case." Accordingly, the charging instrument and jury instructions still included venue as an element of the charged crimes.

(1)   the act occurred on or about August 7th, 2013;

(2)   defendant possessed a dangerous or deadly weapon;

(3)   defendant intended to unlawfully use a weapon against Frieze;

(4)   defendant personally used or threatened to use a firearm during the commission of this felony.

*See* ORS 166.220 (defining UUW);[2] ORS 161.610 (defining the "with a firearm" aggravating element).[3]

The elements of pointing a firearm at another, as charged by the state and explained in the jury instructions, were (again omitting venue):

(1)   the act occurred on or about August 7th, 2013;

(2)   at the time of the offense, defendant was over twelve years old;

(3)   defendant intentionally pointed or aimed a loaded or empty gun at or toward Frieze;

(4)   Frieze was within range of the firearm.

*See* ORS 166.190.[4]

---

[2] ORS 166.220 provides, in pertinent part:

"(1) A person commits the crime of unlawful use of a weapon if the person:

"(a) *** [P]ossesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015[.]"

[3] ORS 161.610 provides, in pertinent part:

"(1) As used in this section, 'firearm' has the meaning given that term in ORS 166.210.

"(2) The use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime as provided in this section. When a crime is so pleaded, the aggravated nature of the crime may be indicated by adding the words 'with a firearm' to the title of the offense. The unaggravated crime shall be considered a lesser included offense."

[4] ORS 166.190 provides, in pertinent part:

"Any person over the age of 12 years who, with or without malice, purposely points or aims any loaded or empty pistol, gun, revolver or other firearm, at or toward any other person within range of the firearm, except in self-defense, shall be fined upon conviction in any sum not less than $10 nor more than $500, or be imprisoned in the county jail not less than 10 days nor more than six months, or both."

The parties agree that the crime of pointing a firearm at another includes an element—the pointing—that is not also an element of the crime of UUW with a firearm.

The remaining question is whether UUW with a firearm includes an element that pointing a firearm at another does not. The state asserts that it does, because a person can commit the crime of pointing a firearm at another with an *unloaded* gun and, the state contends, an unloaded gun is not a "dangerous or deadly weapon" for purposes of UUW with a firearm. Put differently, the state asserts that UUW with a firearm includes an element—possession of a deadly or dangerous weapon—that pointing a firearm at another does not. At the very least, the state argues, "it is not beyond dispute that merger was required" and, therefore, defendant's unpreserved merger argument does not establish error that is apparent on the face of the record.

Defendant's contrary argument is brief; he asserts only that "a firearm is a deadly weapon." To establish that the trial court plainly was required to merge the convictions for UUW with a firearm and pointing a firearm at another, though, defendant's argument must be understood as urging us to conclude—as an obvious point of law—that even an *empty* firearm is *always* a dangerous or deadly weapon. Only if that were true would we be able to say that the UUW element of "possessed a dangerous or deadly weapon" did not require the state to prove anything more than it already had to prove to establish that defendant had "pointed or aimed a loaded or empty gun" for purposes of establishing that defendant committed the crime of pointing a firearm at another. In other words, the elements of UUW with a firearm are subsumed within the elements of pointing a firearm at another only if it is true that a person who possesses "a loaded *or* empty gun" always can be said to possess a dangerous or deadly weapon. (Emphasis added.)

But it is far from obvious that an empty gun is always a deadly—or even a dangerous—weapon. The pertinent terms are defined in ORS 161.015:

"(1) 'Dangerous weapon' means any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or

threatened to be used, is readily capable of causing death or serious physical injury.

"(2) 'Deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

Defendant has pointed to no precedent supporting the view that an unloaded gun necessarily is "presently" or even "readily" capable of causing death or serious physical injury. To the contrary, our cases suggest that an unloaded gun generally may *not* qualify as a deadly weapon, at least absent evidence that it was operable and could quickly be loaded. *See State v. Mustain,* 66 Or App 367, 371, 675 P2d 494, *rev den,* 297 Or 83 (1984) (without evidence that a shotgun was loaded, or that "there was any ammunition * * * so that the shotgun could have been readily loaded by defendant," the record did not include "evidence from which it could rationally be inferred that the shotgun was 'presently capable' of causing death or injury"); *State v. Armstrong,* 52 Or App 161, 171, 628 P2d 1206, *rev den,* 291 Or 662 (1981) (suggesting that a firearm must be loaded to be "presently capable of causing death or serious physical injury").

Moreover, case-specific circumstances may be important for determining whether an unloaded gun qualifies even as a dangerous weapon, that is, one that is "readily capable" of causing death or serious physical injury. *Compare State v. Briney,* 345 Or 505, 516, 200 P3d 550 (2008) ("for a firearm to be 'readily capable' of use as a weapon' for the purposes of ORS 166.250(1)(a)," the firearm must "either be operational or promptly able to be made so"), *with State v. Thorne,* 41 Or App 583, 588, 599 P2d 1206 (1979) (under circumstances of that case, "[t]o have been readily capable of causing death or serious injury * * * the gun would have had to be loaded").

In sum, defendant has not identified any source of law, and we are not aware of any, making it "obvious" that a firearm, whether loaded or not, is always a deadly or dangerous weapon. Thus, it is not obvious that the elements of UUW with a firearm are subsumed within the elements of pointing a firearm at another. Because the point is not obvious, defendant's argument does not establish that the trial

court plainly erred by not merging the guilty verdicts for UUW with a firearm and pointing a firearm at another.

We turn to defendant's second unpreserved argument, which challenges the sentence that the trial court imposed on the conviction for UUW with a firearm. Specifically, defendant argues that the trial court plainly erred by imposing a term of post-prison supervision of "36 month(s) minus time actually served" which, according to defendant, is impermissibly indeterminate in length because "the term will fluctuate based on any good-time credit defendant may receive," reducing the amount of time he spends incarcerated. That argument is based on *State v. Stalder*, 205 Or App 126, 132-33, 133 P3d 920, *rev den*, 340 Or 673 (2006), in which we held that a trial court errs by imposing a term of post-prison supervision that is "indefinite" in that it "depend[s] on the length of [the] defendant's actual prison time."[5] The state concedes the *Stalder* error and acknowledges that this case is indistinguishable from other cases in which we have addressed our discretion to correct that kind of plain sentencing error notwithstanding the defendant's failure to object to the sentence in the circuit court.

We agree that the trial court plainly erred by imposing a sentence that includes an indefinite term of post-prison supervision. Moreover, because correcting the error may significantly affect the terms of defendant's sentence, we conclude that the gravity of the error, the interests of the parties, and the ends of justice all militate in favor of exercising our discretion to correct the error. Accordingly, we remand for resentencing.

Remanded for resentencing; otherwise affirmed.

---

[5] That holding is based on OAR 213-005-0005, which provides that a judgment of conviction "shall state the length of incarceration and the length of post-prison supervision."