Submitted March 19, in Case No. 211200312, reversed; in Case No. 211200311, affirmed October 29, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFERY LEE MEEK,
*Defendant-Appellant.*

Lane County Circuit Court
211200311, 211200312;
A151149 (Control), A151150

338 P3d 767

Peter Gartlan, Chief Defender, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant appeals a judgment of conviction for violating a stalking protective order (SPO), ORS 163.750, and an adjudication finding defendant in contempt of court, ORS 33.065, both in connection with a letter defendant sent to a person protected by an SPO.[1] Defendant assigns error to, *inter alia*, the trial court's denial of defendant's motions for judgment of acquittal (MJOAs) on both charges. As explained below, we conclude that defendant was entitled to acquittal on both charges because, while the state charged defendant with causing an *"object"* to be delivered to the protected person, the evidence at trial showed only that defendant had sent a *letter* to that person, and a "written communication," ORS 163.730(3)(d), is not an "object" for purposes of ORS 163.750(1)(c). Accordingly, we reverse the judgment as to both charges.[2]

The relevant facts, for purposes of our review of the denial of the motions for judgment of acquittal, are undisputed. Defendant and the complainant, M, dated. After their relationship ended, defendant sent M hundreds of e-mails and text messages and, on at least one occasion, sat outside M's house and refused to leave. M eventually sought an SPO, which the trial court issued in February 2011. The final SPO barred defendant from "any contacts" with M, and, as relevant here, explicitly defined prohibited "contacts" as including "sending or making written communications in any form to [M]," and "delivering directly or through a third person any object to the home, property, place of work or school of [M]."[3]

On December 12, 2011, defendant sent a letter, via the postal service, to M's residence. The letter, which was directed to M and her family, read:

---

[1] On appeal, defendant challenges the conviction and sanction in Case No. 211200312. Although defendant was also convicted of a second SPO violation and found in contempt in connection with a separate incident in Case No. 211200311, defendant does not challenge that conviction or sanction on appeal.

[2] Our disposition obviates any consideration of defendant's assignment of error to the trial court's denial of his motion to dismiss the charge of violating ORS 163.750.

[3] Defendant, as the respondent in the SPO proceeding, did not appeal the SPO.

"I'm deeply sorry for what I put you and your family through as well as my own. Words cannot express how truly sorry I[] am for the anxiety, frustration and inconvenience I've caused you. I would give my life to protect you. I was repulsively selfish in my actions and didn't understand God's Love. His love is for us to put others needs before our own and to forgive one another.

"I have and will continue to leave you alone in peace. A second chance is all I ask to be free from you and to live life once more. I write you in the hope that we may place our anger and bitterness aside and to forgive one another as [our] Heavenly Father would and move on.

"Sincerely,

"Very Respectfully,

"[defendant's signature]

"2 Corinthians 2:5-11"

M received the letter on December 15, 2011, and promptly reported it to the police. Shortly thereafter, defendant was charged by information with violating the SPO, ORS 163.750 (Count 1), and contempt of court, ORS 33.065 (Count 2). With respect to Count 1, the original charging instrument alleged that defendant violated the SPO "by sending or making *written communication* to [M], thereby creating a reasonable apprehension regarding the person[al] safety of [M]." (Emphasis added.) With respect to Count 2, the information alleged that defendant "unlawfully and willfully disobey[ed] an order of the Lane County Circuit Court, by contacting [M]."

The state subsequently filed an amended information—whose allegations form the predicate for our review of the sufficiency of the state's proof at trial. The amended information included revisions to the allegations of both counts—those revisions were not only material, but ultimately (as we will explain) of dispositive significance. Specifically, the amended information alleged, as to both counts, that defendant violated the SPO by "by delivering through a third party an *object* to the home * * * of [M]." (Emphasis added.)

At trial, the state adduced evidence that defendant had sent the letter to M's home. The letter and its envelope

were introduced into evidence, and M testified as to having received the letter on December 15, 2011. Deputy May, who had responded to M's call that day, corroborated M's testimony and testified that when he spoke with defendant the next day, on December 16, defendant admitted to having sent the letter. There was no evidence that defendant caused anything other than the letter to be delivered to M.

Defendant moved for a judgment of acquittal, asserting that, because the December 15 letter was a "written communication" within the meaning of ORS 163.730(3)(d), the state was required, under ORS 163.750(1)(c), to show that the letter had "created reasonable apprehension regarding the personal safety of the protected person"[4]—and that the state had adduced no proof that M or her family had experienced such apprehension. The state countered that, because the letter was an "object" within the meaning of ORS 163.730(3)(k), ORS 163.750(1)(c) was inapposite and, thus, proof of "reasonable apprehension" was immaterial. The trial court ultimately agreed with the state that the letter was an "object" and denied the MJOAs.

The jury subsequently found defendant guilty of the SPO violation, and the court rendered an adjudication of guilt as to contempt of court. Defendant appeals the ensuing judgment. On appeal, the parties essentially reiterate their arguments before the trial court. Central to the dispute is the proper construction of the terms "written * * * communication in any form," ORS 163.730(3)(d), and "any object," ORS 163.730(3)(k), for the purposes of the application of ORS 163.750(1).

ORS 163.730(3) sets out 11 categories of "contact" that may violate an SPO. That statute provides, in part:

"'Contact' includes but is not limited to:

"(a)   Coming into the visual or physical presence of the other person;

"(b)   Following the other person;

"(c)   Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

---

[4] Those statutes are set out in the text below. 266 Or App at 553-54.

"(d)  *Sending or making written or electronic communications in any form to the other person*;

"(e)  Speaking with the other person by any means;

"(f)  Communicating with the other person through a third person;

"(g)  Committing a crime against the other person;

"(h)  Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i)  Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j)  Damaging the other person's home, property, place of work or school;

"(k)  *Delivering directly or through a third person any* **object** *to the home, property, place of work or school of the other person*[.]"

(Emphasis and boldface added.)

ORS 163.750(1), in turn, provides:

"A person commits the crime of violating a court's stalking protective order when:

"(a)  The person has been served with a court's stalking protective order * * *;

"(b)  The person, subsequent to the service of the order, has engaged intentionally, knowingly or recklessly in conduct prohibited by the order; and

"(c)  If the conduct is prohibited contact as defined by ORS 163.730(3)(d), (e), (f), (h) or (i), the subsequent conduct has created reasonable apprehension regarding the personal safety of a person protected by the order."

Thus, by its terms, ORS 163.750(1) provides that a criminal violation occurs when a person subject to a valid SPO intentionally, knowingly, or recklessly engages in conduct prohibited by that SPO. Additionally, subsection (1)(c) imposes, for certain types of prohibited "contacts," an additional element—*viz.*, that the conduct "created reasonable apprehension regarding the personal safety" of the protected individual. Specifically, that additional element applies to

"[s]ending or making written \*\*\* communications in any form," ORS 163.730(3)(d), but does not apply to "[d]elivering \*\*\* any object to [the protected person's] home," ORS 163.730(3)(k).

Therein lies the rub: For purposes of ORS 163.750(1)(c), is a letter an "object," a "written communication"—or, possibly, both? As he did before the trial court, defendant contends that a letter is a written communication, not an object. Defendant asserts that that understanding comports with the legislature's intent, in response to constitutional concerns, *see, e.g., State v. Rangel*, 328 Or 294, 977 P2d 379 (1999), to impose qualitatively different requirements for alleged violations arising from contacts involving expression. Treating letters as "objects" would, defendant posits, circumvent that constitutionally informed legislative design.

The state remonstrates that the two categories are not mutually exclusive and, indeed, that, as a matter of plain meaning, a letter qualifies both as a "written communication" and (because it is "tangible") as an "object." That understanding, the state suggests, is consistent with the "reasonable apprehension" requirement, because sending a physical object such as a letter to the victim is "likely to create greater apprehension than an electronic communication would."

In resolving the matter, we employ, of course, the methodology prescribed in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The legislature's intent is our lodestar. In discerning that intent, we begin by examining the text of the statute in context, along with any pertinent legislative history. *Id.*

We begin by acknowledging the obvious: As a matter of plain meaning, without regard to the statutory design and context, a letter is both a "written communication" and, because it is tangible, an "object."[5] At the most basic textual level, the ostensible breadth of both terms is reinforced by their adjectival garnishes: "in any form" and "any."

---

[5] Indeed, given the statutory text's distinction between "written" and "electronic" communications, it would appear that the former are necessarily tangible.

Text, however, cannot be viewed in isolation, but must, instead, be considered in the totality of the statutory framework. That inquiry is informed by rules (or, more precisely, principles) of construction that bear directly on the interpretation of the statutory provision in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Here, two such rules of construction are especially pertinent. The first rule is a general assumption that, when the legislature employs "different terms" within the same statute, it "intends different meanings for those terms." *State v. Newell*, 238 Or App 385, 392-93, 242 P3d 709 (2010) (internal citation omitted). The second rule is that, "[a]s a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions." *Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013); *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[W]e assume that the legislature did not intend any portion of its enactments to be meaningless surplusage.").

In this case, the state's proposed construction is incompatible with those principles in combination. To be sure, as a literal matter, "written communications" (as distinct from "electronic communications") and "objects" are not congruent, but, in the state's construction, the former is subsumed entirely within the latter, effectively rendering the former nugatory. The state's proposed construction could sanction subterfuge—that is, any time a letter, or other tangible "written communication," did *not* create "reasonable apprehension," the state could simply elect to proceed on an "object" allegation, circumventing the application of ORS 163.750(1)(c).

Finally, legislative history confirms the constitutional sensibility underlying the statutory design. ORS 163.730(3), introduced as Senate Bill (SB) 833, was enacted by the 1993 Legislative Assembly, as part of a general anti-stalking scheme. Several anti-stalking bills had been introduced during the 1993 legislative session. SB 833 ultimately became law, but its language, as amended, was largely drawn from House Bill 2412 (1993), and was the product of collaboration amongst legislators from the House and Senate, law enforcement interests, the criminal defense

bar, the American Civil Liberties Union (ACLU), and victims' advocates. *See* Tape Recording, Senate Committee on Judiciary, SB 833, May 4, 1993, Tape 140, Side A; Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, SB 833, June 9, 1993, Tape 126, Side A.

SB 833, as enacted, was designed to accommodate those constituencies' divergent interests. First, the legislature set out to create a manageable, flexible, and effective statutory scheme, with both civil and criminal components, to enable law enforcement officers, courts, and victims to combat stalking. Second, because the bill restricted speech—to the extent that it authorized courts to prohibit communications by issuing SPOs and criminalized communications that constituted stalking or violated an existing SPO—the legislature was particularly concerned with, and sought to foreclose, potential constitutional problems with the bill. As Committee Counsel Bill Taylor explained, the measure, as enacted, "reflects the work done by district attorneys, the criminal defense bar, and the ACLU on this issue of making the bill constitutional." Tape Recording, Senate Committee on Judiciary, SB 833, May 4, 1993, Tape 140, Side A (statement of Committee Counsel Bill Taylor). Similarly, Senator Ron Cease, the chief sponsor of SB 833, explained that the amendments were intended to address issues identified by the ACLU, which had to do with the "nature of the crime itself." Tape Recording, Senate Committee on Judiciary, SB 833, May 4, 1993, Tape 140, Side A (testimony of Sen Ron Cease).

The distinction, embedded in ORS 163.730(3), between communicative and noncommunicative contact, as well as the concomitant inclusion of the "reasonable apprehension" element for communicative contacts that violate an SPO, were crafted to comply with Article I, section 8, of the Oregon Constitution. *See, e.g., State v. Robertson*, 293 Or 402, 649 P2d 569 (1982).[6] The prohibitions on communicative

---

[6] Similarly, the determination as to whether an SPO or a stalking-related criminal conviction is challengeable on constitutional grounds tracks the statutory distinction between communicative and noncommunicative contacts. *See, e.g., State v. Maxwell*, 165 Or App 467, 475-76, 998 P2d 680 (2000), *rev den*, 334 Or 632 (2002) (disallowing constitutional challenge to conviction predicated upon

"contacts" were designed to be content neutral, to focus exclusively on the effect (*viz.*, "reasonable apprehension") of such contacts on the recipient, and to restrict only non-privileged expression. Tape Recording, Senate Committee on Judiciary, SB 833, May 4, 1993, Tape 140, Side A (statement of David Fidanque, ACLU); Tape Recording, Senate Committee on Judiciary, SB 833, May 5, 1993, Tape 142, Side A (statement of Rep Kevin Mannix); Tape Recording, Senate Committee on Judiciary, SB 833, May 5, 1993, Tape 143, Side A (statements of Rep Kevin Mannix and David Fidanque).

In sum, the totality of the statutory design and the legislative history demonstrates that a "written communication," ORS 163.730(3)(d), is not an "object," ORS 163.730(3)(k), for purposes of ORS 163.750(1). Indeed, to construe the statutes otherwise would not only contradict the patent legislative intent, but also implicate precisely the same constitutional pitfalls that the legislature sought to avoid. *See Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 522, 238 P3d 395 (2010) ("When confronted with competing, reasonable constructions of a statute, and there is even a tenable argument that one of them would render the statute unconstitutional, we generally favor the other construction.").

Thus, defendant's December 15, 2011, letter to M and her family was not an "object" for purposes of the crime of violating a stalking protective order, ORS 163.750(1).[7] As noted, in the amended information, the state prosecuted solely on the allegation that defendant had delivered (by

a noncommunicative contact, where entire course of prohibited conduct involved communicative and noncommunicative contacts but the defendant was charged only with violating the SPO by "coming into the visual and/or physical presence of [the victim]," based on the defendant's physical presence at the victim's church).

[7] There is, however, one case that potentially supports an interpretation under which ORS 163.730(3)(k) is broad enough to include certain documents. *See State v. Buchalski*, 264 Or App 142, 144, 331 P3d 1049, *modified on other grounds on recons*, 266 Or App 225, 337 P3d 923 (2014) (upholding convictions that were predicated upon allegations that, by causing a civil complaint to be delivered to the victim, the defendant "recklessly violated the SPO by delivering an object to the victim's home * * * and workplace"). *Buchalski*, however, is of limited relevance here, because in that case, we were not asked to determine, and did not purport to resolve, whether a pleading is an "object," as opposed to a "written communication," for purposes of ORS 163.750(1).

way of a third party) an "object," and there was no proof at trial that defendant delivered, or caused to be delivered, any item, other than the letter, to the protected person. *See* 266 Or App at 552. Thus, defendant was entitled to an acquittal on the charge of violating the stalking protective order. The same is true with respect to the contempt charge, which, similarly, was predicated solely upon the alleged delivery of an "object." Accordingly, both the criminal conviction and the contempt adjudication must be reversed.

In Case No. 211200312, reversed; in Case No. 211200311, affirmed.