DeVORE, J.
*8 Defendant appeals a judgment of conviction for third-degree robbery, ORS 164.395, assigning error to the trial court's denial of his motion for judgment of acquittal.[1] Defendant argues that the state's evidence failed to prove he used force to retain the stolen item "immediately after the taking" such that his theft constituted a robbery. The state argues a rational factfinder could conclude otherwise, contending that nothing intervened between the theft and the force to sever the two events. We agree with defendant that, on this record, the evidence was insufficient to prove that his force was used "immediately after" the theft. Accordingly, we reverse and remand the judgment of conviction as to third-degree robbery, remand for resentencing, and otherwise affirm.[2]
When reviewing the denial of a motion for judgment of acquittal, we recount the facts in the light most favorable to the state. State v. Rennells , 213 Or. App. 423, 425, 162 P.3d 1006 (2007) (citation omitted). On the day in question, defendant and a companion entered Sunglass Hut, a store at the Woodburn Premium Outlets shopping center. The men caught the attention of the store's manager, who found their behavior "suspicious." The manager observed defendant remove a pair of sunglasses from a display case, try them on, and then leave the store without returning them. As defendant was leaving the store, the manager called mall security to report the theft.
Security guards-who are located throughout the mall-identified someone meeting defendant's description in another store, Men's Wearhouse. A security guard came to Sunglass *503 Hut and, with the manager, viewed the security camera footage to confirm the suspect's identity. The manager then went to Men's Wearhouse, which is visible from *9 Sunglass Hut, but 12 stores-nearly one city block-away. There, she met the head of security, who relayed that police were on the way. As the manager waited nearby for police to arrive, she saw defendant emerge from Men's Wearhouse. Defendant sat on a bench with a soda, looking at his phone.
When a police officer arrived, approximately 10 to 15 minutes had elapsed since the manager's call to security. The officer approached defendant, asking him to chat at a nearby location. Defendant complied. However, when defendant noticed the manager, he began "yelling and screaming" that he had put the glasses back and that the manager was racist. The manager told defendant that they would "call it a day" if he returned the sunglasses, but defendant adamantly denied having the item. Because defendant was "causing such a scene," the officer grabbed his forearm, telling him that he was under arrest. A struggle ensued. Defendant said, "I'm not letting you handcuff me, I'm not going anywhere," pushing the officer and attempting to flee. Two additional officers assisted in detaining defendant as he continued yelling, swinging his arms, kicking, "pulling away," "thrashing," and "jerking around." The officers eventually handcuffed defendant and, with some difficulty, placed him in a patrol car. The sunglasses were found in defendant's pocket.
Defendant was charged with third-degree robbery. That statute provides, in relevant part:
"A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:
"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[.]"
ORS 164.395(1). During a bench trial and after the state rested its case, defendant moved for judgment of acquittal, arguing that his physical resistance did not occur "immediately after the taking" within the meaning of the statute. The trial court denied defendant's motion, noting that invitations for defendant to return the sunglasses, and defendant's repeated refusal to do so, supported the inference *10 that he used force to retain the stolen item. Defendant was subsequently convicted of the offense.
On appeal, defendant assigns error to the trial court's denial of his motion for judgment of acquittal. He contends that his use of force did not occur "immediately after the taking" because of the "significant period of time" and the "considerable distance" that transpired after the theft. In addition, defendant distinguishes his case from others, noting the absence of "hot pursuit." The state counters that defendant's use of force occurred "immediately after the taking" because the theft was ongoing. It asserts that mall employees and police were actively working to apprehend defendant from the moment he stole the sunglasses. The state also highlights that, at the time of defendant's struggle with police, he still possessed the stolen item and was attempting to retain it.
The parties' arguments raise two questions. First, we must determine the meaning of the phrase that refers to using physical force, with requisite intent, "immediately after the taking." (Emphasis added.) The phrase appears together with reference to the "immediate use of physical force" that occurs "in the course of committing" a theft. Such force makes a theft a robbery. ORS 164.395(1). Our determination of the meaning of that phrase is a question of statutory construction, requiring us to examine the statute's text in context-including related statutes and case law-and, as necessary, any pertinent legislative history. State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009) (outlining the methodology). Second, we must determine whether the state offered sufficient evidence to survive defendant's motion for judgment of acquittal, examining whether "a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Rennells , 213 Or. App. at 425, 162 P.3d 1006 (citation omitted).
*504 To construe the meaning of "immediately after the taking," we begin with the text and context of the statute on third-degree robbery. Gaines , 346 Or. at 171, 206 P.3d 1042. The legislature has not defined the critical term "immediately," and this court has had few opportunities to interpret it. We have determined that it encompasses cases of "hot pursuit"
*11 in which the thief uses force against his pursuer. State v. Rios , 24 Or. App. 393, 395-96, 545 P.2d 609 (1976) (holding that a fleeing shoplifter who turned directly in front of the store and threw bottles at the pursuing shopkeeper did so to retain the stolen property immediately after the taking); State v. Tolson , 24 Or. App. 657, 661, 546 P.2d 1115 (1976) (holding that a shoplifter's use of force after being chased 455 feet from the store was immediate). However, as noted in Rios , although such a case "clearly comes under the robbery statute," we left undecided the question of
"whether the statute also covers a situation where it is not so clear * * *, whether, with more elapsed time and space from the taking, the force could be interpreted as having been intended to effect escape from some threatened detention, rather than retaining of stolen property."
24 Or. App. at 396, 545 P.2d 609. Consequently, case law does not yet determine how the term "immediately" applies to the use of force after "more elapsed time." Id.
Although the legislature provides no further definition of "immediately," the term's ordinary usage suggests it includes only those situations that occur without interlude. See State v. Murray , 340 Or. 599, 604, 136 P.3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense."). "Immediately" is defined as "without interval of time: without delay: straightway." Webster's Third New Int'l Dictionary 1129 (unabridged ed. 2002).[3] "Immediate" includes "existing without intervening space * * * not far apart or distant," as well as "acting or being without the intervention of another object, cause, or agency." Id. As we previously concluded, "immediately" can be understood to mean "having nothing coming between." Tolson , 24 Or. App. at 661, 546 P.2d 1115.
Consistent with common usage, legislative history indicates that the term "immediately" means that the sequence of events linking the theft to the use of force *12 occurs without an interruption of a cognizable interval of time, space, or incident. See Gaines , 346 Or. at 172, 206 P.3d 1042 (the court may examine the legislative history even if it perceives no ambiguity in the text of the statute). The drafters of the statute on third-degree robbery were concerned with protecting the public from violence. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 148, 155 (July 1970). To that end, they extended the definition of robbery to include using force "in the course of committing or attempting to commit" the theft, thereby covering "the attempt state through the phase of flight." Id. "[C]ommitting or attempting to commit" was "not further defined."[4] Id . However, the subcommittee that drafted this portion of the statute explained the concept, citing the Model Penal Code:
"No rule-of-thumb is proposed to delimit the time and space of 'flight' * * *. The concept of 'fresh pursuit' will be helpful in suggesting realistic boundaries between the occasion of the theft and a later distinct occasion when the escaped thief is apprehended."
*505 Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, June 22, 1968, Tape 7, Side 1 (statement of Donald Paillette); Model Penal Code § 222.1 Comment 2 (Tentative Draft 11 1960), 70.[5]
At the time the statute was enacted, "fresh pursuit" was generally understood to mean pursuit of a suspect attempting to escape. See Black's Law Dictionary 794 (4th ed. 1968) (defining fresh pursuit as one "instituted immediately and with intent to reclaim or recapture * * * a thief *13 fl[ee]ing with stolen goods" (citing White v. State , 70 Miss. 253, 253, 11 So. 632, 632 (1892) (fresh pursuit includes a situation wherein, upon discovery of the offense, "the officer immediately follows and overtakes the felon, who is attempting to escape") ) ). Cases in other states reflected that understanding. See generally City of Wenatchee v. Durham , 43 Wash. App. 547, 550-51, 718 P.2d 819, 821-22 (1986), superseded by statute , Wash. Rev. Code § 10.93.001, as recognized in Vance v. State , 116 Wash. App. 412, 65 P.3d 668 (2003) (reviewing the common law across jurisdictions and concluding that five criteria are to be used in an analysis of fresh pursuit, including "that the individual sought must be attempting to escape to avoid arrest or at least know he is being pursued" (citations omitted) ); accord State v. Goff , 174 Neb. 548, 555, 118 N.W.2d 625, 630 (1962), overruled on other grounds by State v. Fletcher , 221 Neb. 562, 378 N.W.2d 859 (1985) (emphasizing that the suspect must be attempting to escape or fleeing to avoid an arrest); People v. Pool , 27 Cal. 572, 572 (1865) (fresh pursuit includes situations in which guilty parties are fleeing to avoid arrest, and the officers, by diligent pursuit, overtake them).
The statute's drafters, in citing the Model Penal Code and referring to the concept of "fresh pursuit," envisioned "the phase of flight" to mean the period in which the suspect attempts to evade his pursuer and escape. Donald Paillette, the Project Director of the revision commission, explained,
"In other words, if two hours later, or the next day, he's seen and some attempt is made at that time to get the property back or restrain him [inaudible] and he uses force then, I don't think under any of these drafts-Model Penal Code, or New York, or any of the others-that we would say he committed armed robbery or robbery in the third degree."
Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, June 22, 1968, Tape 7, Side 1.
In contrast, the subcommittee explored the hypothetical situation in which a thief takes an item unseen, and the store owner, quickly realizing what occurred, chases after the thief and confronts him on the sidewalk a half-block from the store. Id. The committee members who weighed in *14 on the discussion agreed that the use of force, under such circumstances, would support the inference that the thief acted to retain the item and, therefore, committed robbery. Id.
Based on that history, we may draw several conclusions about the legislature's intent. Robbery can include situations involving the use of force during flight. Flight readily includes situations in which the thief is confronted directly upon leaving the store, and it extends beyond the store during fresh pursuit. However, robbery does not encompass situations in which the thief uses force at some later point after the theft is complete when the thief is no longer trying to escape from the scene of the theft. We read the legislative history to indicate that a cognizable interval of time and distance will sever the theft from the use of force unless fresh pursuit links them together.
Our reading of ORS 164.395 and its legislative history is consistent with New York's treatment of their nearly identical statute, upon which Oregon's statute was modeled.[6]
*506 Commentary § 148 at 155; N.Y. Penal Law § 160.00 (McKinney 2018). See State v. Walker , 356 Or. 4, 24, 333 P.3d 316 (2014) (cases from other jurisdictions that came after the Oregon statute's enactment "may be consulted for their persuasive value"). Under similar factual circumstances, the New York appellate court applied comparable principles, reaching the same result. It identified the following factors for determining whether force occurred "immediately after the taking" for the purposes of robbery:
"the distance between the crime and the use of force or a dangerous instrument, the elapsed time since the actual taking of the property, whether the culprit is in possession of the fruits of the crime, whether he or she had reached a place of temporary safety and whether police, security guards or citizens were in close pursuit."
*15 People v. Robertson , 53 A.D.3d 791, 792, 861 N.Y.S.2d 492, 493 (2008) (citation omitted).
In Robertson , the defendant stole pants from a department store in a mall. Id. at 791, 861 N.Y.S.2d at 492. Security guards surreptitiously followed and surveilled him for 30 minutes as he walked through the mall, entering and reentering stores, exiting and reentering the building, and then exiting the building again. Id. When security guards approached the defendant in the parking lot, he (among other things) swung a belt and punched a guard in the face. Id. at 791-92, 861 N.Y.S.2d at 492. The defendant was charged with and convicted of robbery. Id. at 792, 861 N.Y.S.2d at 492. On appeal, the appellate court observed:
"While defendant encountered the security guards near the store, he had walked around in and out of the mall for approximately 30 minutes after taking the pants before the guards approached him and demanded return of the store's property. They had surreptitiously followed him, not making any effort to apprehend him during that time; there was no indication that defendant was aware that he was being followed or that he attempted to evade pursuit. Defendant appeared to believe that he had reached a point of temporary safety when he left the store with the stolen merchandise and continued through the mall without apprehension."
Id. at 792-93, 861 N.Y.S.2d at 493 (citation omitted). The court determined that continuous surreptitious surveillance-to which the defendant is oblivious-does not amount to fresh pursuit. Accordingly, the court modified the defendant's judgment, reducing the conviction from robbery to petit larceny, noting it "was not a case where police or the victim confronted the culprit or gave chase directly following the culprit's taking of the property." Id. at 792-93, 861 N.Y.S.2d at 493 (citations omitted).
New York's example parallels our understanding of Oregon's statute on third-degree robbery. Absent evidence of "close pursuit," such as an "indication that defendant was aware that he was being followed or that he attempted to evade pursuit," intervening time, distance, and events may well break the link between the theft and the subsequent use of force. Id. at 792-93, 861 N.Y.S.2d at 493.
*16 When that understanding is applied to the facts at hand, we conclude that a rational trier of fact could not find that defendant used force "immediately after the taking" within the meaning of ORS 164.395. Time and distance intervened between defendant's theft and his struggle with police. About 10 to 15 minutes had passed. Defendant spent that time walking around the mall, going in and out of at least one other store, and walking nearly a block away. The record contains no evidence to suggest that, at the time defendant was located, defendant was then in the process of escape. The state offered nothing to show defendant's evident awareness, much less evasion, of his pursuers. Defendant's conduct was consistent with the theft being complete. He sat on a bench with a soda, looking at his phone. When asked, defendant willingly accompanied a police officer to another location to have a conversation. Defendant reacted with *507 force only after he had been located and apprehended in another location.[7] After an interval of time and distance, fresh pursuit did not link the theft of sunglasses to the force ultimately used to resist detention. For those reasons, the state's evidence on third-degree robbery was insufficient to prove that defendant used force "immediately" after the theft. We therefore reverse defendant's conviction for third-degree robbery.[8]
In A163278, reversed and remanded as to conviction for third-degree robbery; remanded for resentencing; otherwise affirmed. In A163279 and A163280, affirmed.

Defendant was also charged and convicted on a count of resisting arrest, ORS 162.315, for conduct in the same incident. That conviction is not at issue on appeal.

This appeal (A163278) was consolidated with two appeals from judgments revoking probation (A163279 and A163280) based on the conviction for resisting arrest. When briefing this case, defendant reported that he does not challenge the judgments revoking probation.

See also State v. James , 266 Or. App. 660, 667 n. 3, 338 P.3d 782 (2014) ("[W]e note that Webster's Third New Int'l Dictionary (unabridged ed. 2002) can be considered to be a 'contemporaneous' source for statutes dating back to 1961 (if not earlier).").

The subcommittee explored the possibility of incorporating additional definitions. Senator Burns, chair of the subcommittee, suggested qualifying the phrase "in the course of committing" by including a definition clarifying that it included only immediate flight. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, June 22, 1968, Tape 7, Side 1 (statement of Senator John Burns). However, Bruce Spaulding, a subcommittee member, preferred having all of the statute's text in one location without cross-references, and the subcommittee ultimately agreed to forgo creating a separate section for definitions. Id. (statement of Bruce Spaulding).

The cited version of the Model Penal Code incorporated the common-law meaning of "fresh pursuit." Model Penal Code § 3.06 (Tentative Draft 8 1958), 45 ("[T]he ancient phrase of the common law is too expressive to abandon without better cause.").

N.Y. Penal Law § 160.00(1) (McKinney 2018) provides, in relevant part:
"A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
"1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking."

As noted, defendant was convicted on a count of resisting arrest, ORS 162.315.

Neither party has argued that, if we reverse the third-degree robbery conviction, the case should be remanded with instructions to enter a conviction for the lesser-included offense of third-degree theft. We express no opinion on that issue.