No. 336 April 16, 2025 725

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEREK RAMIREZ NEBREJA,
*Defendant-Appellant.*

Washington County Circuit Court
23CR03534; A181277

Janelle F. Wipper, Judge.

Argued and submitted March 6, 2025.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Convictions on Counts 1 and 2 reversed; remanded for resentencing; otherwise affirmed.

**JOYCE, J.**

A jury convicted defendant of first- and second-degree robbery (Counts 1 and 2); unauthorized use of a vehicle (Count 3); unlawful use of a weapon (Count 4); and felon in possession of a firearm (Count 5).[1] In his first two assignments of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the first- and second-degree robbery charges because the state failed to prove that defendant threatened force "immediately after the taking." In his third and fourth assignments of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the unlawful use of a weapon and felon in possession of a firearm charges because the state failed to prove that defendant possessed a real gun. Finally, in his fifth assignment of error, defendant argues that the trial court erred in refusing to merge the verdict on the second-degree robbery charge with the verdict on the first-degree robbery charge.

With respect to defendant's first two assignments of error, we conclude that the trial court erred in denying defendant's motion for judgment of acquittal on the robbery charges. That conclusion obviates the need to address defendant's fifth assignment of error. As to the third and fourth assignments of error, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal because the evidence was sufficient to allow a rational trier of fact to find that the gun defendant brandished was a real gun. Accordingly, we reverse defendant's convictions on Counts 1 and 2, remand for resentencing, and otherwise affirm.

We begin with defendant's first two assignments of error, in which he challenges the trial court's denial of his motion for judgment of acquittal on the robbery charges. In reviewing the denial of a motion for judgment of acquittal, "we recount the facts in the light most favorable to the state." *State v. Tolbert*, 295 Or App 6, 8, 433 P3d 501 (2018).

On January 19, D discovered that his car had been stolen. D reported the theft to the police. Three days later,

_____

[1] The trial court merged the verdicts on Counts 3 and 4 with the verdict on Count 1.

D was driving his wife's car when he saw his stolen car being driven by a woman. A man, later identified as defendant, was riding in the passenger seat. D, who does not speak English, pulled up beside the stolen car and yelled at them in Spanish to stop, saying that it was his car. From what D could understand, the woman indicated that she would stop, but then she sped off at a high rate of speed, and D followed them. After driving for about a mile, the woman drove into the parking lot of an apartment complex and parked the stolen car. D pulled in behind his stolen car, blocking it from leaving. As D got out of his wife's car, defendant immediately came up to him, yelling and pointing a gun at him. D got back into his wife's car and drove away while defendant briefly followed him on foot while still yelling and pointing the gun at D.

D called the police, who arrived at the apartment complex and arrested defendant. The state charged defendant with first- and second-degree robbery, ORS 164.415, ORS 164.405; unauthorized use of a vehicle (UUV), ORS 164.135; unlawful use of a weapon, ORS 166.220(1)(a); and felon in possession of a firearm, ORS 166.270.[2]

A person commits first- or second-degree robbery if, as relevant here, they commit third-degree robbery, they are armed with a dangerous weapon, and they use or attempt to use that weapon. ORS 164.405; ORS 164.415. As relevant here, ORS 164.395 defines third-degree robbery as follows:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 [(Unauthorized use of a vehicle)] the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[.]"

The state here charged defendant with first- and second-degree robbery based on defendant committing UUV. In turn, a person commits the crime of UUV when, with the requisite mental state, that person "takes, operates,

---

[2] The state also charged defendant with possession of a burglary tool or theft device but subsequently dismissed that charge.

exercises control over or otherwise uses another's vehicle" or "rides in another's vehicle" without the owner's consent. ORS 164.135(1)(a) - (b).

At trial, defendant moved for a judgment of acquittal on the robbery charges, arguing that the state failed to prove that defendant used or threatened to use force "immediately after the taking." In defendant's view, the gap between the taking and the use of force was three days, which is not "immediately after the taking," as required by ORS 164.395(1)(a). *See Tolbert*, 295 Or App at 16 (concluding that the evidence was insufficient to prove that force was used "immediately after" the theft where 10 to 15 minutes passed between the defendant's theft and his struggle with police and "fresh pursuit did not link the theft *** to the force ultimately used"). The state argued that, because defendant was charged with robbery based on UUV—not theft—there was a "fresh taking" when D told defendant and the woman that the car was his and the occupants sped off. In other words, in the state's view, the "fresh taking" occurred when defendant knew that the car he was riding in was stolen because at that point defendant unequivocally committed UUV (by "using" or "riding in" D's vehicle while knowing that D did not consent). In the state's view, when defendant then threatened D with force immediately after that "taking," defendant committed robbery. The trial court agreed with the state and denied defendant's motion.

On appeal, defendant renews his argument, relying on *Tolbert*, that the state failed to prove that defendant used or threatened to use force "immediately after the taking." The state, for its part, argues that *Tolbert* is not controlling because defendant was charged with robbery based on the underlying offense of UUV. We review the denial of a motion for judgment of acquittal to determine whether, viewing the facts and all reasonable inferences that may be drawn therefrom in the light most favorable to the state, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt, *State v. Powe*, 314 Or App 726, 728-29, 497 P3d 793 (2021), and reverse.

Because defendant argues that *Tolbert* is dispositive, we begin with a brief discussion of the standard set forth in

that case before addressing the state's contention that this case is distinguishable from *Tolbert*. In *Tolbert*, the defendant stole a pair of sunglasses from a store, left the store, visited another store in the shopping complex, and then sat on a bench with a soda. 295 Or App at 8-9. Unbeknownst to the defendant, a store manager had observed the theft and reported it, and approximately 10 to 15 minutes later, police arrived and asked the defendant to speak with them. *Id.* at 9. A struggle ensued, and the defendant pushed an officer, attempted to flee, and swung his arms and kicked his legs as officers handcuffed him. *Id.*

The state charged the defendant with third-degree robbery. *Id.* At trial, the defendant moved for a judgment of acquittal, arguing that any force he used did not occur "immediately after the taking" within the meaning of the statute. *Id.* The trial court denied the motion, and the defendant was convicted. *Id.* at 9-10. On appeal, we reversed. We concluded that "[t]ime and distance intervened between defendant's theft and his struggle with police," and thus a rational trier of fact could not find that the defendant used force "immediately after the taking." *Id.* at 16.

In reaching that conclusion, we examined the text, context, and legislative history of the robbery statute and drew "several conclusions about the legislature's intent." *Id.* at 14. We concluded that a person commits robbery if they use force during flight, which includes situations in which the thief is confronted directly after the theft and extends beyond the theft during "fresh pursuit." *Id.* We further concluded that "robbery does not encompass situations in which the thief uses force at some later point after the theft is complete when the thief is no longer trying to escape from the scene of the theft." *Id.*

Turning to defendant's case, if the state had charged defendant with robbery on the basis of the underlying offense of theft, we would readily conclude—relying on *Tolbert*—that his use of force or threatened use of force three days after the theft did not occur "immediately after the taking" because "a cognizable interval of time and distance * * * sever[ed] the theft from the use of force" and "fresh pursuit" did not link them together. *Id.*

However, the state charged defendant with robbery on the basis of the underlying offense of UUV—a fact that, in the state's view, materially distinguishes this case from *Tolbert*. The state argues that, because UUV is a "continuous crime" and there are many ways to commit UUV, a "taking" for the purposes of the robbery statute begins as soon as a person commits any of the conduct that is prohibited by the UUV statute and continues "so long as the person uses or rides in the vehicle without the owner's consent." *See* ORS 164.135 (outlining the offense of UUV, including unlawfully taking, operating, exercising control over, or otherwise using another's vehicle, or riding in another's vehicle).

Thus, the question before us is whether "taking," within the meaning of the robbery statute, includes the broad category of conduct that is prohibited by the UUV statute. That question is a matter of statutory construction, which requires us to examine the statute's text, context, and any relevant legislative history to determine the enacting legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We begin with the text of the robbery statute. Although "taking" is not defined, the ordinary meaning and the cases that have interpreted it indicate that it is a seizure of property. *Webster's Third Int'l Dictionary* 2333 (unabridged ed 2002) (defining "taking" as a "seizure"); *see also State v. Eastep*, 361 Or 746, 751, 399 P3d 979 (2017) ("When statutes do not define their terms, we assume that the legislature intended them to have their plain, ordinary meanings."); *Tolbert*, 295 Or App at 8 (the defendant took sunglasses from a store without paying); *State v. Rios*, 24 Or App 393, 395, 545 P2d 609 (1976) (the defendant took bottles of wine from a cooler case and left the store without paying). Thus, a "taking" is a seizure that happens at a particular point in time.[3]

---

[3] As explained above, the state argues that all of the conduct covered by the UUV statute constitutes a continuing taking—for example, that as long as defendant continued to "use" the vehicle without D's consent, a taking was occurring at every moment while he was using it. We do not understand the state to argue that D's confrontation of defendant and the driver, and their driving away, created a separate seizure of the vehicle—that is, that D reclaimed the vehicle by telling its occupants to stop and their act of driving away constituted a second separate "taking" within the meaning of ORS 164.395. Accordingly, we do not consider that possibility.

The context of the robbery statute supports that interpretation. The intent element of the robbery statute differentiates between the "taking" of property and the "retention thereof," which suggests that the "taking" is the initial seizure of property, and the "retention thereof" is the continuous possession of that property. ORS 164.395(1)(a); *see State v. Meek*, 266 Or App 550, 556, 338 P3d 767 (2014) (when the legislature uses different terms within the same statute, it intends different meanings for those terms).

With that understanding, we turn to the question whether the legislature intended a broader meaning of "taking" when a person commits robbery based on the underlying crime of UUV. As we will explain, the plain text, context, and legislative history of the statute do not support that interpretation.

Beginning with the text and context, as discussed above, the robbery statute requires the use or threatened use of force with the intent of "[p]reventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking." ORS 164.395(1)(a). It is true that subsection (1) provides that a person commits the crime of robbery in the third degree if they use that force "in the course of committing or attempting to commit *** [UUV]," and there are many ways outside of taking a car that a person could commit UUV. If we were to read subsection (1) in isolation and remove the intent element of paragraph (1)(a), the state's proposed construction of the statute would be plausible—a person could commit robbery if they used force in the course of committing or attempting to commit UUV. Subsection (1), however, "cannot be viewed in isolation, but must, instead, be considered in the totality of the statutory framework." *Meek*, 266 Or App at 556.

When viewed in context, the use or threatened use of force in subsection (1) is unequivocally restricted to the use or threatened use of force with the intent described in paragraph (1)(a). And absent from the text in that paragraph is a reference to any other conduct outside of "the taking of property" or the "retention thereof immediately after the taking." The state's construction of the statute would require us to insert a reference to all of the unauthorized

conduct described in the UUV statute, where the drafters of the statute did not include that text. *See* ORS 174.010 (when interpreting a statute, a court is "not to insert what has been omitted, or to omit what has been inserted"). Thus, the text and context of the robbery statute demonstrate that the legislature did not intend "taking" to have a more expansive meaning when a person commits robbery on the basis of UUV.

The legislative history of the statute further supports that conclusion. The legislature added UUV as a basis for committing robbery in 2003. Or Laws 2003, ch 357, § 1. In adding UUV to the statute, the legislature did not amend the text in paragraph (1)(a), which, as discussed above, refers to using force only during the taking of property or the retention thereof immediately after the taking. That suggests that the legislature did not intend to alter the meaning or operation of that provision within the larger statute. Further, one of the proponents of the amendment, Assistant Attorney General Erik Wasmann, explained that the goal was to include "carjacking" in the robbery statutes so that when a defendant was unsuccessful in taking a car or abandoned the car shortly after taking it, that conduct constituted robbery, even though the evidence might not show the defendant's intent to deprive the car's owner of the car, an element necessary for theft. Audio Recording, Senate Judiciary Committee, SB 122, Feb 25, 2003, at 1:43:00 (statement of Assistant Attorney General Erik Wasmann); *see also* ORS 164.015 (defining theft). And Wasmann defined carjacking as the "taking of another person's vehicle from that person by means of force or threat of force." *Id.* at 1:37:00.

That legislative history indicates that the legislature's intent was to ensure that a defendant's use of force to take a vehicle or to retain a vehicle immediately after taking it would meet the requirements of the robbery statute. The state has not pointed to any legislative history that would suggest that the legislature intended to broaden the meaning of "taking" when a defendant commits robbery based on UUV. Thus, based on the text, context, and legislative history of the statute, we conclude that the meaning of

"taking" for purposes of robbery—notwithstanding whether the underlying offense is theft or UUV—is a seizure that happens at a particular point in time. And the state must prove that the defendant used force or threatened to use force during the taking or immediately after the taking, as set forth in *Tolbert*.

Here, the state failed to make that showing. Defendant yelled at and pointed a gun at D to retain possession of D's car, which had been taken three days earlier. Thus, defendant's use of force to retain the car was not "immediately after the taking." Accordingly, the trial court erred in denying defendant's motion for judgment of acquittal.

In defendant's third and fourth assignments of error, he argues that the trial court erred in denying his motion for judgment of acquittal on the unlawful use of a weapon (UUW) and felon in possession of a firearm (FIP) charges because the state failed to prove that he possessed a "real gun." Under the UUW statute, the state was required to prove that defendant possessed a "dangerous or deadly weapon" that was "readily capable of causing death or serious physical injury." *See* ORS 166.220 (a person commits UUW when they attempt to use unlawfully against another or possesses with intent to use unlawfully against another "any dangerous or deadly weapon"); ORS 161.015(1) (defining "dangerous weapon"). And under the FIP statute, the state was required to prove that he possessed a weapon "which is designed to expel a projectile by the action of powder." *See* ORS 166.270(1) (any person who has been convicted of a felony who possesses any "firearm commits the crime of [FIP]"); ORS 166.210(3) (defining "firearm").

At trial, D testified that the gun that defendant pointed at him was black, not a revolver, and looked similar to the gun the officer was carrying, which was, as the officer later testified, a Glock 17 semi-automatic pistol. D also testified that he is not good at describing weapons. Defendant presented evidence that Amazon sells a Glock pellet gun that looks like a real gun, and his investigator and another officer testified that they have seen BB or pellet guns that look like real handguns. They also testified that it would be

difficult to tell the difference between one of those guns and a real gun without personally handling it. Defendant did not have the gun on him when he was arrested, and police did not find the gun during a search of the premises.

In light of that evidence, defendant contends that the state failed to prove that he possessed a real gun within the meaning of the UUW and FIP statutes. Viewing the evidence in the light most favorable to the state, however, we conclude that the state offered sufficient evidence from which a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt. *See Powe*, 314 Or App at 728-29 (stating standard of review). The evidence included D's testimony and the fact that defendant did not have the gun on him when officers arrested him. That fact establishes a reasonable inference that defendant got rid of the gun after the encounter with D because defendant wanted to avoid the legal consequences of possessing a gun as a felon. Based on that evidence, a rational factfinder could have reasonably inferred that defendant possessed and pointed a real gun at D.

It is true that defendant offered evidence from which a rational factfinder could have drawn a competing inference, but "[a]s in any case involving competing reasonable inferences, what weight to give them presents a question of ultimate fact for factfinders to decide, so long as a rational factfinder could draw each inference." *State v. Simmons*, 279 Or App 756, 765, 379 P3d 580, *rev den*, 360 Or 697 (2016); *see also State v. Turnidge (S059155)*, 359 Or 364, 466, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017) ("[T]he fact that the state could have had a stronger case—one that might have all but eliminated any competing inference that defendant might want the jury to draw—does not mean that the state's proof was not sufficient to defeat defendant's motion for judgment of acquittal."). Thus, the trial court correctly denied defendant's motion for judgment of acquittal on Counts 4 and 5.

Convictions on Counts 1 and 2 reversed; remanded for resentencing; otherwise affirmed.